**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

**MARY GOODMAN**                                               **PLAINTIFF**

**V.**                        **NO. 2:10CV00071 BD**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration**                          **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Plaintiff Mary Goodman appeals the final decision of the Commissioner of the

Social Security Administration (the "Commissioner") denying her claim for Disability

Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and

Supplemental Security income ("SSI") under Title XVI of the Act.  For reasons set out

below, the decision of the Commissioner is AFFIRMED.

**I.      Procedural History and Background:**

On June 25, 2005, Ms. Goodman filed for DIB and SSI benefits claiming a

deformity in her left shoulder, left arm and shoulder pain, carpal tunnel syndrome in her

right hand, and asthma.  (Tr. 39-43, 887-89, 898)  Ms. Goodman claims an onset date of

December 31, 2003, and she met the insured status requirements through June 30, 2007.

(Tr. 121, 894)

Ms. Goodman's claims were denied initially and upon reconsideration.  (Tr. 29-30, 882-86)  At her request, an Administrative Law Judge ("ALJ")[1] held a hearing on October 22, 2007, at which Ms. Goodman appeared with her attorney and testified.  (Tr. 890-925)  A vocational expert also testified at the hearing.  (Tr. 920-24)

The ALJ issued a decision on February 20, 2008, finding that Ms. Goodman was not disabled for purposes of the Act.  (Tr. 13-20)  On May 17, 2010, the Appeals Council denied her request for review, making the ALJ's decision the Commissioner's final decision.  (Tr. 4-6)

Ms. Goodman was thirty years old at the time of the hearing.  (Tr. 894)  She had a high school education and some training in cosmetology school.  (Tr. 894)  She had past work as a cashier/clerk and a factory inspector.  (Tr. 13, 130)

## II.   Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from

---

[1] The Honorable Garry L. Brewer.

[2] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied.  20 C.F.R. § 404.1520(a)(4)(iv).

performing any other jobs available in significant numbers in the national economy.  20

C.F.R. §§ 404.1520(a)-(g); 416.920(a)-(g).

The ALJ found that Ms. Goodman had not engaged in substantial gainful activity

since December 31, 2003, her alleged onset date.  (Tr. 18)  He found that she had the

following severe impairments: asthma, mild carpal tunnel syndrome on the right side, and

a bowing deformity of the left humerus due to birth trauma.  (Tr. 19)  He found that Ms.

Goodman did not have an impairment or combination of impairments that met or equaled

an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.

§§ 404.1526, 416.926).  (Tr. 19)

The ALJ determined Ms. Goodman had the residual functional capacity to perform

light work, "eroded by the following limitations: she may only occasionally use her left

non-dominant arm for lifting, grasping, and handling.  She may not perform overhead

lifting.  Furthermore, she must avoid concentrated exposure to air-borne pollutants such

as dust, smoke, fumes, and gases."  (Tr. 19)  He found that Ms. Goodman's "past relevant

work as cashier did not require the performance of work related activities precluded by

the above limitations."  (Tr. 19)  The ALJ went on to find, based on the testimony of the

vocational expert, that a significant number of other jobs exist in the national economy

which a person with Ms. Goodman's residual functional capacity could perform, such as

sales clerk, ticket seller, and cashier.  (Tr. 19)  The ALJ concluded Ms. Goodman was not

disabled within the meaning of the Act.  (Tr. 19)

III.   **Analysis:**

Ms. Goodman claims the findings of the ALJ are not supported by substantial evidence, arguing:  (1) the ALJ erred at Step 4 because she had no substantial gainful activity; and (2) the ALJ's hypothetical did not accurately state her limitations because he improperly rejected the opinions of her treating physician.  (#15 at pp. 20-27)

A.      *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence on the record as a whole to support the decision.  *Johnson v. Astrue*, 627 F.3d 316, 319 (8th Cir. 2010); 42 U.S.C. § 405(g).  Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."  *Id.* (citing *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but the decision cannot be reversed, "simply because some evidence may support the opposite conclusion."  *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

B.      *Substantial Gainful Activity and Past Relevant Work*

According to the applicable regulations, work should not be considered "past relevant work" unless it was performed at a substantial gainful activity ("SGA") level. See *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009); 20 C.F.R. §§ 404.1565(a),

416.965(a).  "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn how to do it." *Mueller*, 561 F.3d at 841 (quoting 20 C.F.R. § 404.1560(b)(1)).

In this case, Ms. Goodman's work records show she earned $735 in 1998, $5,686 in 1999, $7,684 in 2000, $2,616 in 2001, $1,688 in 2002, and $4,145 in 2003.  (Tr. 44) Ms. Goodman's earnings for those years did not rise to the level of substantial gainful activity, which in 1998 and 1999 required average monthly earnings of more than $500 per month and from 2000 forward, average monthly earnings of more than $700 per month.  See 20 C.F.R. §§ 404.1574(b) and 416.974(b).  Accordingly, the ALJ correctly concluded Ms. Goodman's past work did not meet the requirements of "substantial gainful activity," but erred in concluding that Ms. Goodman's work as a cashier was "past relevant work."  (Tr. 17)

Any error made by the ALJ at step four is, however, harmless because he went on to step five to consider whether there were other jobs in the national economy that a person with Ms. Goodman's residual functional capacity could perform.  The ALJ relied on the vocational expert who testified that a person of Ms. Goodman's age, education, past work experience and residual functional capacity could perform light work, such as work as a sales clerk, ticket seller, and check cashier.  (Tr. 19)  The ALJ's analysis and use of the vocational expert testimony at step five sufficiently overcame any error made at step four.

C.    *The Hypothetical and the Treating Physician's Opinion*

At the hearing, the ALJ asked the vocational expert questions about the following

hypothetical person:

> with the same age, education, and work experience as the claimant?  And
> further assume she has the residual functional capacity for light work as that
> term is defined in the Dictionary of Occupational Titles.  With the
> following additional limitations: only occasional use of the left non-
> dominant arm for lifting, grasping, and handling, but no overhead use at all.
> And no concentrated exposure to airborne pollutants such as dust, smoke or
> gasses.  (Tr. 918)

The ALJ asked whether this hypothetical person could perform any work that exists in the

local, regional, or national economy.  (Tr. 918)  The vocational expert testified that such a

person could perform work as a general sales clerk, ticket seller, and check cashier.  (Tr.

919-23)

Ms. Goodman claims the ALJ's hypothetical question overstated her residual

functional capacity.  (#15 at p. 22)  The ALJ bears "the primary responsibility for

assessing a claimant's residual functional capacity based on all relevant evidence."

*Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (citations omitted).  A claimant's

residual functional capacity is a medical question and "at least some" medical evidence

must support the ALJ's residual functional capacity determination.  *Id*.

In support of her claim that the ALJ overstated her residual functional capacity,

Ms. Goodman relies on an October 4, 2005 letter and a March 23, 2006 Multiple

Impairment Questionnaire ("Questionnaire") completed by Purnima Sarkar, M.D., one of her treating physicians.

In her October 4, 2005 letter addressed "TO WHOM IT MAY CONCERN," Dr. Sarkar stated that Ms. Goodman was "unable to perform any type of work with left upper extremity, and her asthma.  She will not be able to work for a year or longer with these conditions."  (Tr. 235)  In the Questionnaire, Dr. Sarkar stated that Ms. Goodman could sit for only three hours of an eight-hour day, and stand or walk for less than one hour in an eight-hour day.[3]  (Tr. 217)  Further, Dr. Sarkar stated that Ms. Goodman could never lift or carry.  (Tr. 218)  When asked to explain, Dr. Sarkar stated "left arm does not function normally."  Dr. Sarkar also stated that Ms. Goodman would likely be absent from work more than three times a month as a result of her impairments.  (Tr. 221)

The ALJ may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole.  *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008) (quoting *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002)).  It is the ALJ's function to resolve conflicts among the various treating and examining physicians.  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).  Additionally, a treating physician's opinion that a claimant is

---

[3] On the Questionnaire, Dr. Sarkar states her date of first treatment of Ms. Goodman was March 31, 2006, and her most recent examination of her was March 17, 2006.  (Tr. 215)  The medical records indicate Ms. Goodman began seeing Dr. Sarkar as early as March 22, 2005.  (Tr. 251)

disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner who is tasked with making that ultimate disability determination.  *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007).

The ALJ considered Dr. Sarkar's opinion at considerable length. (Tr. 16-17)  He ultimately did not give the opinion controlling weight, however, because he found that some of the entries on the Questionnaire were not supported by the record as a whole. (Tr. 16)  See *Taylor v. Chater*, 118 F.3d 1274, 1279 (8th Cir. 1997) (residual functional capacity checklists, although admissible, are entitled to little weight in the evaluation of disability); see also *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000)(discounting treating physician's two pages of checked boxes devoid of illuminating examples, descriptions, or conclusions).

For example, Dr. Sarkar found that Ms. Goodman could never lift or carry and checked that she had "significant limitations in doing repetitive reaching, handling, fingering or lifting."  When asked to explain her response, Dr. Sarkar stated, "left arm does not function normally.  See orthopedic report."  (Tr. 218)

Guy L'Heureux, M.D., an orthopedic specialist, examined Ms. Goodman on October 13, 2004.  He noted she had evident shortening of her left humerus and left upper extremity, and slight bowing was visible at the proximal humerus area, but she has no deformation of the AC joint, no pain on the AC joint, and no pain on the biceps tendon. (Tr. 175)  He found she had "range of motion anterior flexion at about 120 degrees,

8

abduction at 90 degrees.  External rotation limited by 33%.  Internal rotation is nearly full."  (Tr. 175)  He noted she had good range of motion of the wrist, good grip, good circulation in her hand, and good sensitivity in her fingers.  (Tr. 175)

Dr. L'Heureux diagnosed her with post-traumatic bowing of the left humerus with some form of retractile capsulitis.  (Tr. 175)  He recommended she start flexibility exercises and use an anti-inflammatory medication such as Aleve.  He noted that Ms. Goodman would like to have bone lengthening technique, but he explained it would not give her much more function.  He suggested she return with her x-rays for further investigation.  (Tr. 175)

Ms. Goodman returned to Dr. L'Heureux on December 1, 2004.  He noted that she did not believe the mild exercises he had given her had increased her range of motion, and stated, "I think she is more interested in trying to lengthen her arm than any other type of treatment."

At that time, Dr. L'Heurex reviewed her x-rays which show a deformation with bowing laterally.  But, he noted that the "humeral head appears to be in good position." He told Ms. Goodman that he did not see any obstetrical palsy in the area, below the elbow there was no sign of neurological deficit, and he doubted any lengthening procedure would be done on her.  He noted she had the same range of motion as she had at her prior appointment.  (Tr. 174)   At Ms. Goodman's insistence, he referred her to a shoulder specialist.  (Tr. 174)

Dr. L'Heureux's orthopedic report does not support the complete limitation noted by Dr. Sarkar on the Questionnaire.  Dr. L'Heureux did not note any limitation on Ms. Goodman's use of her right arm and hand that would impair her ability to lift and carry. Further, he noted she was "in good general condition" and had some range of motion in the left arm in spite of the bowing.

Ms. Goodman also cites to the records from her January 3, 2007 examination by R. Edward Cooper, Jr., M.D., another orthopedist, as additional support for Dr. Sarkar's conclusions.  (Tr. 425)  Dr. Cooper diagnosed Ms. Goodman with deformity of the left proximal humerus, with significant shortening and with degenerative joint disease and a subcutaneous lipoma on her left superior shoulder.[4]  (Tr. 425)  Dr. Cooper theorized that some day she might require arthroplasty of the joint but did not recommend any surgery for Ms. Goodman at that time.  (Tr. 425)  He noted that "[s]he has excellent strength with internal/external rotation, abduction of the left shoulder with some pain on maximal testing."  (Tr. 425)  Dr. Cooper did not place any work restrictions on Ms. Goodman as a result of the impairments to her left shoulder.

The objective medical evidence does not support Dr. Sarkar's opinion that Ms. Goodman can never lift or carry with her right arm and hand.  Contradicting his conclusion in the Questionnaire that Ms. Goodman can "never" lift or carry, Dr. Sarkar noted that Ms. Goodman had no limitation with grasping, turning or twisting objects;

---

[4]Medical records Ms. Goodman submitted to the Appeals Council indicate that Guy Peeples, M.D. removed the limpoma on her left shoulder on July 2, 2008. (Tr. 487-88)

using fingers/hands for fine manipulations in her right hand; and using her right arm for reaching.  (Tr. 218-19)

In August, 2005, Ms. Goodman complained to Dr. Sarkar of some pain in her right hand.  (Tr. 241)  She was given a trigger point injection.  (Tr. 241)  On March 31, 2006, she returned to Dr. Sarkar and was diagnosed with probable carpal tunnel syndrome in her right wrist and hand.  She was prescribed a wrist splint and ibuprofen and was given a Toradol injection.  (Tr. 212)

On April 25, 2006, Alan M. Nadel, M.D., performed a nerve conduction study on Ms. Goodman.  (Tr. 381-82)  Dr. Nadel concluded that Ms. Goodman had "mild carpal tunnel entrapment on the right, but no denervation."  The ALJ noted that none of her physicians had recommended Ms. Goodman for surgery for her carpal tunnel problem, and the usual treatment for mild carpal tunnel is wrist splints, non-steroidal anti-inflammatory drugs, and changes in posture.

There is substantial evidence to support the ALJ's conclusion that Dr. Sarkar's opinion that Ms. Goodman was unable to do any lifting or carrying should not be given controlling or substantial weight.

In the Questionnaire, Dr. Sarkar also stated Ms. Goodman could stand and walk less than one hour in an eight-hour day.  (Tr. 217)  This opinion is inconsistent with the evidence in the record.  As the ALJ notes, there is no medical evidence that Ms. Goodman had any problems with her back or legs that would prevent her from standing

for long periods.  (Tr. 17)  The ALJ also pointed out that Ms. Goodman had always had the deformity in her left arm but had managed to stand and walk in her previous job as a clerk/cashier and in her cosmetology training.  (Tr. 17)

Ms. Goodman also claims the ALJ erred by finding that her asthma "appears to be well controlled with medications."  (#15 at p. 26)  The ALJ acknowledged that Ms. Goodman did, "require constant monitoring by her doctors due to her asthma" and noted Ms. Goodman's claims that her asthma medications caused her to be "nervous" and "shaky" for a few minutes after she used them.  The ALJ took this into account and concluded her asthma was a severe impairment.  He further found that because of her asthma Ms. Goodman's residual functional capacity was limited to light work that would not involve concentrated exposure to air-borne pollutants such as dust, smoke, fumes, and gases.  (Tr. 19)  The ALJ's finding is supported by substantial evidence.

Ms. Goodman claims the ALJ also erred by concluding that Dr. Sarkar took her subjective allegations of pain at face value.  (#15 at p. 27)  Ms. Goodman claims that a patient's complaints of pain are an essential diagnostic tool.

In this case, the ALJ evaluated Ms. Goodman's credibility under the guidelines set forth in *Polaski v. Heckler*, 739 F.2d 943 (8th Cir. 1984), Social Security Ruling 96-7p, and other relevant authority and concluded that her allegations were not borne out by the record and were not fully credible.  (Tr. 17)  There is substantial evidence supporting the ALJ's credibility analysis.

As the ALJ noted, in documents related to an earlier claim, Ms. Goodman reported doing a wide range of activities, including laundry, dishes, changing sheets, ironing, taking out the trash, shopping, driving, cooking, paying bills, etc.  (Tr. 159)  In her responses to a questionnaire on July 13, 2005, Ms. Goodman reported being able to take care of her three children and cook for them.  (Tr. 89)  She stated she shared cooking and cleaning responsibilities with her sister; drove a car; shopped in stores; read; watched television; and went to church.  (Tr. 90-91)

In her responses to a questionnaire on October 14, 2005, just three months later and with no significant change to her impairments, Ms. Goodman claimed to be able to take care of her children only if her sister helped with combing their hair and ironing their clothes, and she was no longer able to cook, clean, or drive a car.  (Tr. 60, 62-63)

The ALJ pointed out that Ms. Goodman had a very poor work record.  He noted that in the past, she had been able to work, in spite of having a left arm deformity.  (Tr. 17)  The ALJ acknowledged that Ms. Goodman sought medical treatment for her impairments and was compliant with her treatment, but concluded that the pain in her left arm and shoulder, although mild, did not preclude her from a limited range of light work. (Tr. 17)

The ALJ may discount subjective complaints if there are inconsistencies in the record as a whole.  See, *e.g.*, *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (ALJ may discount complaints

inconsistent with the evidence as a whole).  In this case, the ALJ made express credibility

findings and gave his reasons for discrediting Ms. Goodman's subjective complaints.  His

credibility findings are entitled to deference because they are supported by good reasons

and substantial evidence.  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

**IV.**     **Conclusion:**

    There is sufficient evidence in the record as a whole to support the

Commissioner's determination that Mary Goodman was not disabled within the meaning

of the Act.  Accordingly, her appeal is DENIED, and the Clerk is directed to close the

case, this 5th day of May, 2011.

_____

UNITED STATES MAGISTRATE JUDGE